FILED
CLERK
8/19/2015 1:31 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JARRETT R. JENKINS,

                Plaintiff,

-against-                    **ORDER**
                                              14-CV-5685 (SJF)(AKT)

CHASE BANK USA, N.A.,

                Defendant.
----------------------------------------------------------------X
FEUERSTEIN, J.

On September 29, 2014, *pro se* plaintiff Jarrett R. Jenkins ("plaintiff" or "Jenkins") commenced the instant action against Chase Bank USA, N.A. ("defendant" or "Chase") alleging violations of: (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; and (2) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. [Docket Entry No. 1 ("Complaint" or "Compl.")]. Plaintiff has subsequently amended his Complaint twice. [Docket Entry Nos. 13 ("Amended Complaint" or "Am. Compl."), 18 ("Second Amended Complaint" or "Second Am. Compl.")]. Defendant has filed a motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Docket Entry No. 21 ("Motion to Dismiss")], which plaintiff opposes. [Docket Entry No. 25 ("Pl. Opp.")]. For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part.

I.      BACKGROUND[1]

---

[1] As it must do in deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court limits "itself to the facts alleged in the [Second Amended Complaint], which are accepted as true; to any documents attached to the [Second Amended Complaint] as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the [Second Amended Complaint] relies heavily and which are, thus, rendered integral to the [Second Amended Complaint]." *Roth v. CitiMortgage Inc.*, No. 12-civ-2446, 2013 WL 5205775, at *3 (E.D.N.Y. Sept. 11, 2013), *aff'd*, 756 F.3d 178 (2d Cir. 2014); *see also Kleinman v. Elan Corp., plc,* 706 F.3d 145, 147 (2d Cir. 2013). The Court may also draw on facts alleged in the Complaint and Amended Complaint because "even though the [Second] Amended Complaint is the operative pleading, the Court may still credit

1

The Second Amended Complaint alleges that in October 2012, plaintiff obtained his credit report from three credit reporting agencies – Equifax, Transunion and Experian – and found that Chase had "entered into the Plaintiff's [Equifax/Transunion/Experian] credit report[s] claiming two alleged but non-existent debts owed to them" on two accounts, one beginning with the digits 5542 and one beginning with the digits 4254. Second Am. Compl. ¶¶ 12, 15, 18. The Complaint and Amended Complaint allege that defendant Chase had been engaged in this activity of furnishing information about plaintiff's alleged non-existent debts to Equifax, Transunion, and Experian "from at least September 2000." Compl. ¶¶ 12, 15, 18; Am. Compl. ¶¶ 12, 15, 18.

Plaintiff alleges that he disputed the accuracy and correctness of the Chase tradelines with Equifax on or about December 26, 2012 (Second Am. Compl. ¶ 13), that he received a copy of the results of the Equifax reinvestigations on or about January 22, 2013 indicating that both the tradelines were "verified" (*id*. ¶ 14), and that the tradelines continued to be reported on his Equifax credit report until May 22, 2013. *Id*., Ex. 1.[2] Plaintiff alleges that he disputed the accuracy and correctness of the Chase tradelines with Transunion on or about December 26, 2012 (Second Am. Compl. ¶ 16) and that on or about January 25, 2013 he received a copy of the results of the Transunion investigations indicating that both tradelines had been deleted. *Id*. ¶ 17, Ex. 2. Plaintiff alleges that he disputed the accuracy and correctness of the Chase tradelines with Experian on or about December 26, 2012 (Second Am. Compl. ¶ 19),[3] that on or about February

---

admissions in the original complaint and attached exhibits." *Poindexter v. EMI Record Grp. Inc.*, No. 11-civ-559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012).

[2]  All references to "Ex." are to the exhibits attached to the Second Amended Complaint.

[3]  Though the Second Amended Complaint states that plaintiff "disputed the accuracy and correctness of the PRA tradelines with Experian via USPS certified mail on or about December 26, 2012"

2

8, 2013, he received a copy of the results of the Experian reinvestigations indicating that the accounts were verified as belonging to plaintiff and were updated, and that the tradelines continued to be reported on plaintiff's Experian credit report until the date the Second Amended Complaint was filed. *Id*. ¶ 20, Ex. 3. Plaintiff has attached to the Second Amended Complaint excerpts from the investigations/reinvestigations by Equifax, Transunion and Experian. *See* Exs. 1-3. Plaintiff alleges that on or about January 2, 2013, he sent Chase multiple letters requesting a validation of the alleged debts on the 4254 account and the 5542 account (Second Am. Compl. ¶¶ 21-24), which are attached to the Second Amended Complaint (Exs. 4a-4d), but that to date, Chase has "failed to provide any 'general ledger' accounting or proper validation of the alleged debts claimed to be owed by plaintiff." Second Am. Compl. ¶ 25.

Plaintiff alleges that defendant: (1) violated Section 1692d(5) of the FDCPA by "engaging in conduct of which the natural result was the abuse and harassment of the Plaintiff by inputting false, derogatory and inaccurate information in Plaintiff's Experian credit report and updating and certifying said report from October 2013 to present day" (Second Am. Compl. ¶ 29.a.); (2) violated Section 1692e(2)(A) of the FDCPA by "falsely representing the character and amount of the alleged debts in the Plaintiff's Experian credit report from October 2013 to present day" (*id*. ¶ 29.b.); (3) violated Section 1692e(8) of the FDCPA by "communicating to Experian credit information which they knew or should have known to be false from October 2013 to present day" and that defendant "knew or should have known the information they were communicating to Experian was false because the Plaintiff never had any kind of relationship, business or otherwise with Defendant of their predecessor(s)" (*id*. ¶ 29.c.); (4) violated Section 1692f(1) of the FDCPA by "using the Plaintiff's Experian credit report as a means to collect on

---

(Second Am. Compl. ¶ 19), the Court believes this paragraph intended to state the "Chase tradelines" rather than the "PRA tradelines" and will construe it accordingly.

the alleged but non-existent debts" and that defendant's behavior "was unfair and unconscionable" because defendant "never produced [the] agreements [creating the debts] or brought forth any legal or lawful obligation that was owed by Plaintiff after the Plaintiff requested such proof" (*id*. ¶ 29.d); and (5) violated Section 1692g(b) of the FDCPA "by not ceasing collection activity in the Plaintiff's Experian credit report from October 2013 to present day[,] [e]ven after receiving the Plaintiff's multiple requests for validation from on or about January 2, 2013 to present." *Id*. ¶ 29.e. Plaintiff alleges that as a result of defendant's violations of the FDCPA, he "suffered actual damages in the forms of emotional distress and the denial of credit from Cash Call." *Id*. ¶ 30; Exs. 5-6.

Plaintiff also alleges that defendant violated the FCRA by: (1) "failing to conduct an investigation after receiving notice that Plaintiff disputed the information the Defendant had provided to Equifax and Experian" in violation of Section 1681s-2(b)(1)(A) (Second Am. Compl. ¶ 35); (2) "failing to review all relevant information provided by Equifax and Experian pursuant to § 1681i" in violation of Section 1681s-2(b)(1)(B) (*id*. ¶ 36); (3) "reporting inaccurate, incomplete, false, and misleading results of the investigation, if any to Equifax and Experian" in violation of Section 1681s-2(b)(1)(c) (*id*. ¶ 37); and (4) "by failing to notify Equifax and Experian that the reporting of the Defendant tradelines was inaccurate, incomplete, false and misleading" in violation of Section 1681s-2(b)(1)(D). *Id*. ¶ 38. Plaintiff alleges that defendant's behavior, which occurred from January 22, 2013 to the date of the Second Amended Complaint (*id*. ¶¶ 33-34) "demonstrates a willful and knowing disregard for the law or in the alternative negligence of the law." *Id*. ¶¶ 33-34. As a result of the alleged FCRA violation, plaintiff alleges he "suffered actual damages in the forms of emotional distress and the denial of credit from Cash Call." *Id*. ¶ 39; Exs. 5-6.

II.      DISCUSSION

    A.      Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions," and "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). Further, the Court must hold submissions by a *pro se* litigant "to less stringent standards than formal pleadings drafted by lawyers" (*Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)) and construe such submissions liberally and "to raise the strongest arguments that they suggest." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotation marks omitted); *see also Sims v. Blot*, 534 F.3d 117, 133 (2d Cir. 2008) ("courts are...to construe a *pro se* litigant's pleadings and motions liberally").

   B. FDCPA Claim

  Defendant moves to dismiss plaintiff's FDCPA claim on the grounds that defendant, "as Plaintiff's former creditor, is not a 'debt collector' under the FDCPA." [Docket Entry No. 22 (Memorandum of Law in Support of Defendant Chase Bank USA, N.A.'s Motion to Dismiss the Verified Second Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) ("Def. Mem."), at 7)]. Plaintiff, in opposition, argues that "it is unknown at this time whether or not the Defendant sent the Plaintiff any debt collection letters" and it is "also known at this time whether or not the Defendant placed any calls to Plaintiff" and that the court cannot determine on a motion to dismiss whether defendant is a creditor or a debt collector, but rather that information can only be elicited through discovery. [Docket Entry No. 25 (Plaintiff's Memorandum in Opposition to

Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted ("Pl. Opp."), at 9)].

"The FDCPA was enacted 'to eliminate abusive debt collection practices by debt collectors.'" *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 82 (2d Cir. 2015)(citing 15 U.S.C. § 1692e). "To state a FDCPA claim, a plaintiff must show that: (1) she has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Campbell v. Bank of New York Mellon Trust Co.*, No. 11-civ-1588, 2012 WL 2952852, at *10 (S.D.N.Y. May 8, 2012), *report and recommendation adopted sub nom. Campbell v. Bank of New York Trust Co.*, No. 11-civ-1588, 2012 WL 2953967 (S.D.N.Y. July 18, 2012) (internal quotation marks and citation omitted); *see also* 15 U.S.C. § 1692e. The FDCPA defines a "debt collector" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). "Generally, the FDCPA does not apply to creditors." *Algende v. Bay Ridge Fed. Credit Union*, No. 14-civ-2518, 2015 WL 1014217, at *3 (E.D.N.Y. Mar. 9, 2015). A creditor is defined under the FDCPA as "any person who offers or extends credit creating a debt or to whom a debt is owed but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692(a)(4). The FDCPA only applies to a creditor when the creditor "'in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.'" *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (quoting 15

U.S.C. § 1692a(6)); *see also Lautman v. 2800 Coyle St. Owners Corp.*, No. 14-civ-1868, 2014 WL 4843947, at *5 (E.D.N.Y. Sept. 26, 2014). "In order to sustain a claim under the FDCPA, [plaintiff] must plead facts showing that [defendant] is either a debt collector or a creditor that attempted to collect on its debts by using a false name." *Briggs v. Wells Fargo Bank, N.A.*, No. 14-civ-1759, 2015 WL 1014184, at *5 (E.D.N.Y. Mar. 6, 2015).

Here, plaintiff has failed to plead either. Plaintiff makes no allegation that Chase is "a creditor that attempted to collect on its debts by using a false name" (*id.*), but rather makes a conclusory allegation that "Chase is a 'debt collector' as defined by 15 U.S.C. § 1692a(6)." Second Am. Compl. ¶ 7. "The FDCPA establishes two alternative predicates for 'debt collector' status – engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004) (citing 15 U.S.C. § 1692a(6)). Plaintiff does not allege that Chase's "principal purpose" is the collection of debts, but rather acknowledges that Chase "is usually a banking institution that extends credit to consumers" (Second Am. Compl. ¶ 6) but argues that "in regards to this action," Chase was "engaged in the business of 'debt collection' by using the credit reporting systems as a means of collecting on a 'debt.'" *Id*. However, plaintiff has pled no facts indicating that Chase was regularly collecting "debts owed or due another" (15 U.S.C. § 1692(a)(6)) and in fact, plaintiff alleges that Chase entered into Plaintiff's credit reports "two alleged but non-existent debts *owed to them*." Second Am. Compl. ¶¶ 12, 15, 18 (emphasis added). Therefore, despite plaintiff's conclusory allegation that defendant is a "debt collector," the specific allegations that the alleged debts were owed to Chase and the credit reports attached to the Second Amended Complaint stating that the credit lines were originally issued by Chase belie any notion that Chase was collecting a debt owed or due to another and instead indicate that

8

Chase is not a "debt collector" within the meaning of the FDCPA. *See Shieh v. Flushing Branch, Chase Bank USA, N.A.*, No. 11-civ-5505, 2012 WL 2678932, at *7-8 (E.D.N.Y. July 6, 2012) (dismissing FDCPA claim against Chase, the original creditor, because "Chase, as [plaintiff's] former creditor, [was] exempted from the FDCPA" and there was "no allegation that it attempted to collect the debt under a false name"); *Torres v. Baum*, No. 10-civ-1385, 2011 WL 2532945, at *7 (N.D.N.Y. June 24, 2011) ("[F]urther disqualifying Chase Bank N.A. as a possible debt collector under our facts is its obvious status as a former creditor"); *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007) ("Since the Bank was not collecting the debt 'of another,' it is not a proper defendant under the FDCPA.").

Plaintiff's attempt to argue that Chase is a debt collector because it "acquired the alleged debts when they were in default and is subsequently not a 'creditor' as defined by 15 U.S.C. § 1692(a)(4)" (Second Am. Compl. ¶ 7) is unavailing because "[w]hether a debt is in default at the time a 'person' obtained it is relevant to an exception to the definition of a 'debt collector' [but] [b]ecause plaintiff does not sufficiently allege that [defendant] is a 'debt collector' in the first place, the statutory exception is irrelevant." *Izmirligil v. Bank of New York Mellon*, No. 11-civ-5591, 2013 WL 1345370, at *4 (E.D.N.Y. Apr. 2, 2013) (finding plaintiff had failed to sufficiently allege that defendant was a "debt collector" within the meaning of the FDCPA where plaintiff argued that defendant was a "debt collector" because "it took an assignment of the alleged debt purportedly when the debt was in default"). Here, "[a]bsent allegations of specific facts that could plausibly support his conclusion that [Chase] is a debt collector, [plaintiff's] claim is insufficient to maintain a valid cause of action under the FDCPA." *Briggs*, 2015 WL 1014184, at *5.[4]

---

[4] Because the Court dismisses plaintiff's FDCPA claim for failure to state a claim, it need not address defendant's arguments regarding the timeliness of that claim.

In his opposition, plaintiff requests that "if the court determines Plaintiff has failed to state a claim, Plaintiff asks the court to grant leave to amend the complaint" (Pl. Opp., at 16), but plaintiff "fails to specify…how amendment would cure the pleadings deficiencies" (*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)), which itself warrants denying leave to amend. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (affirming denial of leave to amend where "plaintiffs…identified no additional facts or legal theories…they might assert if given leave to amend"); *Schwasnick v. Field s*, No. 08-civ-4759, 2010 WL 2679935, at *11 (E.D.N.Y. June 30, 2010) ("The court may also deny leave to amend where the Plaintiff[] fails to submit a proposed pleading and does not explain why.") (citation omitted). Moreover, because plaintiff has been given multiple opportunities to amend, including one opportunity in response to defendant's first motion to dismiss (*see* [Docket Entry Nos. 17-18]), and repleading would be unproductive or futile…allowing him yet another chance to amend his complaint is not required." *Collier v. Aksys Ltd.*, No. 3:04-civ-1232, 2005 WL 1949868, at *18 (D. Conn. Aug. 15, 2005), *aff'd*, 179 F. App'x 770 (2d Cir. 2006); *see also De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) ("[W]e have...upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim."). Therefore, plaintiff's FDCPA claim is dismissed with prejudice.

  C. FCRA Claim

    1. Statute of Limitations

Defendant moves to dismiss plaintiff's FCRA claim as untimely, arguing that the "credit reports make clear that the subject tradelines date back to September 2000 or earlier" [Docket Entry No. 26 (Memorandum of Law in Reply to Plaintiff's Opposition and in Further Support of

Defendant Chase Bank USA, N.A.'s Motion to Dismiss the Verified Second Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) ("Def. Reply"), at 2)], that in his prior pleadings, plaintiff alleged that Chase furnished false information to the credit reporting agencies "dating back to at least September 2000" (*id*. (internal quotations and citations omitted); *see also* Def. Mem, at 13) and that therefore, "Plaintiff's FCRA claim is barred under the applicable statute of limitations – which is ***the earlier of*** two years after the plaintiff discovered the violation that is the basis for such liability or five years after the date on which the violation that is the basis for such liability occurs." Def. Reply, at 2 (emphasis in original). While defendant correctly asserts that "an FCRA action must be brought 'not later than the earlier of – (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs'" (*Trans Union LLC v. Lindor*, 393 F. App'x 786, 788 (2d Cir. 2010) (citing 15 U.S.C. § 1681p)), the FCRA violation plaintiff alleges is not, as defendant asserts "the posting of the September 2000 credit report trade lines" (Def. Mem., at 14), but rather the alleged FCRA violation is defendant's failure "to conduct a proper and reasonable investigations [sic] as required by the statute" after receiving plaintiff's "notice of dispute" from Equifax/Experian in violation of Section 1681s-2b of the FCRA. Second Am. Compl. ¶¶ 33-34.

The FCRA, "imposes several duties on those who furnish information to consumer reporting agencies" (*Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. § 1681)), two of which are: "(1) to report accurate information and correct any inaccurate information, and (2) upon notice from a credit reporting agency that there is a dispute regarding the completeness or accuracy of the information provided, to conduct an investigation, review the information in question, and report the results to the credit reporting agency." *Briggs*,

2015 WL 1014184, at *3. While "the FCRA does not permit a private cause of action arising from a creditor's failure to furnish accurate information to credit reporting agencies under subsection (a) of § 1681s-2" (*Shieh*, 2012 WL 2678932, at *6), "[c]ourts recognize a private cause of action…pursuant to Section 1681s-2(b)" where a plaintiff shows that: (1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in "willful or negligent noncompliance with the statute." *Markovskaya v. Am. Home Mortgage Servicing, Inc.*, 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012)(citation omitted). Here, plaintiff's Section 1681s-2(b) claim alleges that: (1) plaintiff "disputed the accuracy and correctness of the CHASE tradelines" with Equifax, Transunion, and Experian (Second Am. Compl. ¶¶ 13, 16, 19); (2) that "after receiving the 'notice of dispute' from [Equifax/Experian]," defendant continued to report "the false, negative and inaccurate information into the Plaintiff's [Equifax/Experian] report on the alleged but non-existent debts without conducting proper and reasonable investigations as required by 15 U.S.C. § 1681s-2(b) demonstrat[ing] a willful and knowing disregard for the law or in the alternative negligence of the law" (*id.* ¶¶ 33-34); (3) that Equifax and Experian conducted reinvestigations of plaintiff's disputes and verified the tradelines (*id.* ¶¶ 14, 20); and (4) that plaintiff suffered actual damages in the forms of emotional distress and a denial of credit. *Id.* ¶ 39.[5] Accepting as true plaintiff's allegations that he sent

---

[5] While plaintiff will be required to demonstrate that defendant received notice of plaintiff's credit dispute from the credit reporting agencies and thereafter failed to conduct a reasonable investigation (*see Markovskaya*, 867 F. Supp. 2d at 344 (granting summary judgment to defendant where "[t]here [was] no evidence...that any such agency contacted [furnisher defendant] directly with respect to Plaintiff's account" because where plaintiff "shows only that the furnisher received notice of the dispute from the consumer, but not from a credit reporting agency, no claim is stated")), his allegations in the Second Amended Complaint, accepted as true and construed liberally in accordance with his *pro se* status, are sufficient to state a claim under Section 1681s-2(b). *See Mendy v. JP Morgan Chase & Co.*, No. 12-civ-8252, 2014 WL 1224549, at *4-5 (S.D.N.Y. Mar. 24, 2014); *Kinel v. Sherman Acquisition II LP*, No. 05-civ-3456, 2006 WL 5157678, at *13-16 (S.D.N.Y. Feb. 28, 2006), *report and recommendation adopted*, No. 05-civ-3456, 2007 WL 2049566 (S.D.N.Y. July 13, 2007).

notice of his dispute to Equifax and Experian on or about December 26, 2012 (*id.* ¶¶ 33-34), Chase's liability under Section 1681s-2(b) "would arise thirty days after [it] was notified of the dispute by the credit reporting agencies" (*Grigoriou v. First Resolution Inv. Corp.*, No. 13-civ-6008, 2014 WL 1270047, at *5 (W.D.N.Y. Mar. 26, 2014)) because "[g]enerally, liability for a 15 U.S.C. § 1681s-2(b) violation arises *30 days* after the furnisher of information does not comply with its obligations outlined in § 1681s-2(b)(1)(A)-(D)." *Id.*, at *4 (emphasis in original). Therefore plaintiff's section 1681s-2(b) claim accrued, at the earliest, in late January 2013, and because it was brought on September 29, 2014, within two (2) years from the date on which liability arose, plaintiff's FCRA claim is timely and the Motion to Dismiss is denied to the extent it seeks dismissal of the FCRA claim on statute of limitations grounds. *See Rambarran v. Bank of Am. Corp.*, No. 07-civ-21798, 2007 WL 2774256, at *5 (S.D. Fla. Sept. 24, 2007) (declining to dismiss FCRA claim as time-barred where plaintiff filed complaint within two years of the earliest possible date defendant furnisher's liability under section 1681s-2(b) arose, which was thirty days after plaintiff sent his notice of dispute to the credit reporting agencies).[6]

---

[6] Defendant's argument that, applying New York's "single-publication rule," the statute of limitations on plaintiff's FCRA claim began to run in September 2000 at the time of the publication of the first offending credit report and thus expired in September 2005 (Def. Mem., at 13 n.10; Def Reply, at 4), is rejected because the cases cited by defendant applying New York's "single-publication" rule in the context of credit reporting concern state law causes of action for the intentional tort of defamation, rather than violations of the FCRA, and because "[g]iven the FCRA's language, as well as its purpose, each alleged failure of [d]efandant[] to comply with [its] FCRA obligations constitutes a separate FCRA violation, even though the violations stem from the same allegedly false or inaccurate credit information." *Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 290 (S.D.N.Y. 2014). Therefore, where FCRA violations are based upon a furnisher's obligations under Section 1681s-2(b)(1), "each separate notice of dispute triggers a duty to investigate the disputed information" (*id.*), which triggers its own separate statute of limitations. *See id.*; *Young v. LVNV Funding LLC,* No. 12-civ-1180, 2013 WL 4551722, at *3 (E.D.Mo. Aug. 28, 2013) ("each re-report of inaccurate information, and each failure to conduct a reasonable investigation in response to a dispute, is a separate FCRA violation subject to its own statute of limitations.").

2. Actual Damages

Defendant also moves to dismiss plaintiff's FCRA claim "because [plaintiff] fails to allege any actual damages, as statutorily required under both 15 U.S.C. § 1681n and 15 U.S.C. § 1681o." Def. Mem., at 14.

Under the FCRA, "plaintiffs may recover actual damages under § l681o for negligent violations and may recover actual damages, statutory damages, and punitive damages under § 1681n for willful violations." *Willey v. J.P. Morgan Chase, N.A.*, No. 09-civ-1397, 2009 WL 1938987, at *2 (S.D.N.Y. July 7, 2009); *see also Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13-civ-7174, 2014 WL 6076733, at *4 (S.D.N.Y. Nov. 14, 2014) ("Negligent noncompliance with the statute creates liability for actual damages and attorney's fees….while willful noncompliance creates liability for actual damages or statutory damages between $100 and $1,000, in addition to punitive damages and attorney's fees…") (internal citations omitted). The Second Amended Complaint seeks: (1) actual damages under Section 1681o for defendant's negligent conduct (Second Am. Compl., Prayer for Relief, ¶ 2); (2) statutory damages under Section 1681n(a)(1)(A) (*id*.); (3) costs and attorney's fees under Section 1681n(a)(3) and/or Section 1681o (*id*. ¶ 3); (3) punitive damages under Section 1681n(a)(2), or in the alternative for negligent conduct pursuant to Section 1681o. *Id.* ¶ 4.

First, because Section 1681n, unlike Section 1681o, does not require proof of actual damages, "the Court will not dismiss Plaintiff's willful-violation claims…for failure to allege actual damages, because even if Plaintiff had failed to do so, the [Second Amended] Complaint would still state a claim based on entitlement to statutory damages." *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 240 (S.D.N.Y. 2014); *see also Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 476 (2d Cir. 1995) ("punitive damages may be available even where a plaintiff has

sustained no actual damages."); *Jones v. Experian Info. Solutions, Inc.*, 982 F. Supp. 2d 268, 276 (S.D.N.Y. 2013) ("a plaintiff can sue under section 1681n without proving actual damages…").

Second, while "a complaint alleging a claim for negligent violations of the FCRA under § 1681*o* must allege actual damages" (*Ritchie*, 14 F. Supp. 3d at 240), plaintiff has sufficiently pled actual damages insofar as he alleges that defendant's FCRA violations caused him emotional distress and the denial of credit. *See* Second Am. Compl. ¶ 39. Under the FCRA, "actual damages" may include a denial of credit, as well as "humiliation and mental distress, even in the absence of out-of-pocket expenses" (*Casella*, 56 F.3d at 474) though a plaintiff cannot "recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency." *Id.* at 475; *see also Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1242 (D. Minn. 2013), *aff'd*, 564 F. App'x 878 (8th Cir. 2014) ("A denial of credit or higher interest rates" and "[e]motional distress damages" can "constitute actual damages under the FCRA"). In the Second Amended Complaint, plaintiff alleges that "[a]s a direct and proximate result of one or more or all of the [FCRA] statutory violations…Plaintiff has suffered actual damages in the forms of emotional distress…and the denial of credit from Cash Call" (Second Am. Compl. ¶ 39) and attaches to the Second Amended Complaint a declaration describing the physical and emotional symptoms from which he allegedly suffers "due to, or made worse by, the actions of [Chase], debt collection and illegal credit reporting activities" (Ex. 5), and a copy of an email dated March 15, 2013 indicating he was denied a loan from Western Sky Financial due to "in whole or in part … information contained in [his] credit report." Ex. 6.

Defendant argues that plaintiff cannot credibly allege that Chase, rather than any other party, specifically caused his damages (Def. Mem., at 17) and cites to cases dismissing FCRA

claims for failure to demonstrate actual damages (*id.*, at 14-17), however the cases cited were decided at the summary judgment stage, rather than on a motion to dismiss. While plaintiff will ultimately be required to "provide at least some evidence that his denial of consumer credit or similar lost opportunities are attributable to [Chase's] failure to correct the furnished information after receiving notice of the dispute" and demonstrate that "any emotional distress he experienced is fairly attributable to [Chase's] unreasonable investigation of his dispute" (*Okocha v. HSBC Bank USA, N.A.*, No. 08-civ-8650, 2010 WL 5122614, at *6 (S.D.N.Y. Dec. 14, 2010),[7] the allegations in the Second Amended Complaint that plaintiff suffered actual damages in the form of emotional distress and a denial of credit by a third-party based on information contained in his credit report are sufficient, at this stage, to allege actual damages and withstand defendant's motion to dismiss. *See Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 400 (S.D.N.Y. 2014) (allegation by *pro se* plaintiff that, "[a]s a result of...Defendant's conduct,...Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and lowering of credit lines, and having to pay higher auto insurance premiums" was "enough to satisfy Plaintiff's burden to allege actual damages" and defeat defendant's motion to dismiss for failure to state a claim on the ground of failure to allege damages). Therefore, the

---

[7] *See also Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008), *aff'd*, 360 F. App'x 255 (2d Cir. 2010) ("To obtain an award of actual damages under the [FCRA], Plaintiff…must present evidence of a causal relation between the violation of the statute and the loss of credit, or some other harm.") (citation omitted); *Gorman v. Experian Info. Solutions, Inc.*, No. 07-civ-1846, 2008 WL 4934047, at *7 (S.D.N.Y. Nov. 19, 2008)(granting defendant summary judgment because plaintiff "failed to meet his burden of showing that the alleged inaccurate information on the Experian report caused actual damages, either in the form of out-of-pocket expenses or emotional distress").

16

Motion to Dismiss is denied to the extent it seeks dismissal of the FCRA claim for failure to allege actual damages.

III. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss is granted as to plaintiff's FDCPA claim, which is dismissed with prejudice, and denied as to plaintiff's FCRA claim. The pretrial conference scheduled before the undersigned on September 29, 2015 is adjourned to March 24, 2016 at 11:15 a.m., at which time all discovery must be completed.

**SO ORDERED.**

s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

Dated: August 19, 2015
       Central Islip, New York